Willie James MORELAND Plaintiff,

v.

Jason DORSEY and Gary Long, in
their individual capacities,
Defendants.

No. CIV.A.1:01–CV–105–JE.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 11, 2002.

Willie James Moreland, Johnson Correctional Institution, Wrightsville, for Plaintiff.

Terry Eugene Williams, Gary Kevin Morris, Terry E. Williams & Assoc., Lawrenville, for Defendant.

### ORDER

CARNES, District Judge.

This case is before the Court on plaintiff's motion for summary judgment [19–1], defendants' motion for summary judgment [21–1], defendants' motion to amend the brief in support of motion for summary judgment [24–1], and plaintiff's motion for appointment of counsel [25–1]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that plaintiff's motion for summary judgment [19–1] shall be **DENIED,** defendants' motion for summary judgment [21–1] shall be **GRANTED,** defendants' motion to amend the brief in support of motion for summary judgment [24–1] shall be **GRANTED,** and plaintiff's motion for appointment of counsel [25–1] shall be **DENIED as MOOT.**

### BACKGROUND

This is a 42 U.S.C. § 1983 ("Section 1983") civil rights complaint. Plaintiff Willie James Moreland ("plaintiff" or "Moreland") claims that defendants violated his federal due process rights by physically assaulting him while effectuating an arrest. Moreland, a 41 year old male, is currently an inmate incarcerated in the Hancock State Prison in Sparta, Georgia. (Pl.'s Aff. ¶ 1.) At the time of the incident, defendants Jason Dorsey ("Dorsey") and Gary Long ("Long") (collectively "defendants") were police officers at the Henry County Police Department in McDonough, Georgia.[1] The legal issue in this case is wheth-

---

1. Long subsequently resigned from the Henry County Police Department and took a position with the Union City Police Department. (Defs.' Resp. To Pl.'s Stmt. Of Mat. Facts [23]

er the two defendants used excessive and unreasonable physical force against plaintiff while arresting him.

The undisputed facts of this case are as follows: On the evening of July 18, 1999, the defendants arrived at Moreland's home located in McDonough, Georgia. (Pl.'s Aff. [19] ¶ 5; Defs.' Stmt. Of Mat. Facts ("DSMF") [21] ¶ 1.) Defendants went to Moreland's home to investigate allegations of drug dealing at the residence. (*Id.*) Although the defendants did not possess a warrant for his arrest or to search his home, plaintiff peacefully and willfully exited his home and spoke with them while standing on his front lawn. (Pl.'s Aff. ¶¶ 6–7.) After defendants questioned plaintiff for three to five minutes, they noticed a bulge in plaintiff's pants pocket. (DSMF ¶ 2.) The defendants asked him what the item was and plaintiff pulled out a large roll of cash. (DSMF ¶ 3.)

At this point, both parties recount a different version of events. Defendants state that once they saw the large roll of cash, plaintiff fled from them and they pursued him on foot. (DSMF ¶ 4.) Plaintiff, however, contends that the defendants conducted a pat down search of him and that, because defendants search became "too physically aggressive," he fled from their "grasp and presence." (Pl.'s Aff. ¶¶ 7–8.) Plaintiff asserts that, while running, he threw several small bags of drug contraband onto the sidewalk and that the defendants saw him do this. (Pl.'s Aff. ¶ 9.)

Both parties agree that the defendants "immediately gave chase" and "quickly overtook" plaintiff as he was "running across a public street." (Pl.'s Aff. ¶ 9; DSMF ¶ 4.) Dorsey reached plaintiff first. (Pl.'s Aff. ¶ 9; DSMF ¶ 5.) Plaintiff admits that he struck Dorsey at this time. In-

deed, plaintiff subsequently pled guilty to felony and misdemeanor obstruction of justice charges as a result of his conduct. (Pl.'s Stmt. Of Mat. Facts [19] ¶ 12; Defs.' Resp. To Pl.'s Stmt. Of Undisp. Facts [23] ¶ 12.)

Plaintiff's version of events upon his capture, however, portray the defendants as the aggressors, without any physical provocation by plaintiff. Specifically, plaintiff asserts that Dorsey immediately physically restrained him and arrested him for possession of cocaine. (Pl.'s Aff. ¶ 9.) While being "pinned to the ground" by Dorsey, plaintiff asserts that Long began to use his "closed fist" and "police flashlight" to strike him "violently and savagely" on the head, neck, shoulders, ribs and lower back. (*Id.* ¶ 10.) Plaintiff claims that Long also kicked him in the ribs while he "laid in Dorsey's restraint." (*Id.* ¶ 11.) Immediately thereafter, plaintiff states that "Long deliberately and maliciously injected pepper spray directly into my eyes, nostrils, and mouth." (*Id.*) As a result of the above-described conduct, Moreland states that he was temporarily rendered unconscious. (*Id.* ¶ 12.) Plaintiff notes that at no time during his apprehension and arrest did Dorsey ever intervene to protect him from the physical blows thrown and pepper spray used by Long. (Pl.'s Aff. ¶ 14.)

Unsurprisingly, defendants recount the event quite differently. Defendants state that they pursued plaintiff on foot, until he fell to the ground and took Dorsey down with him. As the defendants attempted to handcuff and arrest plaintiff, they allege that he rolled over on top of Dorsey and began to strike Dorsey with his fists and his head. (DSMF ¶¶ 5–6.) During the struggle, defendants state that plaintiff

¶ 4.) He is now employed with the Butts County Sheriff's Department. (*Id.*) Plaintiff alleges that Dorsey was relieved of his duties due to misconduct. (*See* June 6, 2001 Pleading [7].)

threw several small bags of cocaine to the ground. (*Id.* ¶ 6.) Long asserts that he repeatedly told plaintiff to get off of Dorsey and tried to pull him off of Dorsey as well, but to no avail. (*Id.* ¶¶ 8–9.) Long states that only then did he spray pepper spray into plaintiff's face and strike plaintiff with his hand in an attempt to get him off Dorsey. (*Id.* ¶ 10.) At that time, plaintiff stopped resisting their attempts to take him into custody. (*Id.* ¶ 11.) Dorsey states that he had a cut on his lip and sustained bruising to his face due to plaintiff's administered blows. (Dorsey Aff. ¶ 10.)

Plaintiff was taken promptly to Henry Medical Center for treatment following the incident. (Pl.'s Aff. ¶ 12; DSMF ¶.) He was treated for a small cut over his right eye. (Pl.'s Aff. ¶ 13; DSMF ¶ 13.) The medical personnel also noted bruising on plaintiff's left cheek. (DSMF ¶ 14.) In addition to the hematoma and laceration, plaintiff states that he also suffered extreme burning in his eyes from the pepper spray, has permanent and visible scarring, and presently suffers from post-traumatic stress disorder. (Pl.'s Aff. ¶ 13.) The Henry Medical Center does not mention these ailments, however, in their documentation and plaintiff did not seek any further medical attention for the injuries he allegedly sustained during his arrest. Thus, plaintiff has adduced no evidence to support his allegation concerning these latter "injuries."

After plaintiff was treated, the defendants took him to Henry County Jail where he was booked on charges of felony obstruction of a law enforcement officer, battery on a police officer, and violation of Georgia's Controlled Substances Act. (*Id.* ¶ 15.) At the time of his booking, plaintiff stood five-feet, seven inches tall and weighed 150 pounds. (Pl.'s Stmt. Of Mat. Facts [19] ¶ 13.) He subsequently pled guilty to felony obstruction of an officer,

misdemeanor obstruction of an officer, and felony possession of cocaine. Plaintiff does not challenge the constitutionality of his conviction.

On January 10, 2001, plaintiff filed a *pro se* Complaint [1] seeking compensatory and punitive damages for alleged violations of his constitutional rights due to the use of excessive force by defendants in effectuating an arrest. On November 30, 2001, plaintiff filed a motion for summary judgment "as to the propriety of monetary damages for their deprivation of plaintiff's Due Process rights in viciously and violently physically assaulting plaintiff during their arrest of plaintiff." (Pl.'s Summ. J. Br. [19] at 1.) On December 19, 2001, defendants filed a motion for summary judgment [19–1], claiming that they did not violate plaintiff's constitutional rights and that, even if they had, they are immune from suit. In January of 2002, the defendants filed a motion to amend brief in support of their summary judgment motion [24–1] and plaintiff filed a motion for appointment of counsel [25–1].

### *DISCUSSION*

### I. Summary Judgement Standard

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the nonmoving par-

ty's case necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. 2548.

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323, 106 S.Ct. 2548; *Apcoa, Inc. v. Fidelity Nat'l Bank,* 906 F.2d 610, 611 (11th Cir.1990). The movant is not required to negate his opponent's claim, however. The movant may discharge his burden by merely " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. After the movant has carried his burden, the nonmoving party is then required to "go beyond the pleadings" and present competent evidence [2] designating " 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. 2548 (quoting FED. R. CIV. P. 56(e)). While the court is to view all evidence and factual inferences in a light most favorable to the nonmoving party, *Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248, 106 S.Ct. 2505. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249–50, 106 S.Ct. 2505. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

issue for trial.' " *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of *every* element material to that party's case so as to create a genuine issue for trial.

## II. Section 1983 Claim

Plaintiff has asserted a Section 1983 claim against both defendants in their individual capacities, arguing that his constitutional rights were violated by defendants. Section 1983 provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, in order to establish a claim under Section 1983, plaintiff must show a violation of a right secured by the Constitution of the United States and also show that the deprivation of this right was committed by a person acting under color of state law. *Cummings v. DeKalb County,* 24 F.3d 1349 (11th Cir.1994); *see also Graham v. Connor,* 490 U.S. 386, 393–394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)

---

**2.** The nonmoving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

(" § 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred") (internal quotes omitted) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).)

## A. Federal Rights Potentially Vindicated by Excessive Force Claim

Because Section 1983 is only an enabling statute, the Court must discern what underlying federal right is purportedly being vindicated by this action. At the initial stages of this suit, plaintiff claimed that the defendants engaged in excessive force in violation of the due process clauses of the Fourth Amendment and Fourteenth Amendment. (*See* Pl.'s Resp. To Mand. Discl. [5] at 1.)[3] In plaintiff's summary judgment motion, however, he calls himself a "pre-trial detainee" and alleges only that his rights under the *Fourteenth* Amendment had been violated due to defendants' conduct. (*See* Pl.'s Br. In Supp. Of Summ. J. [19].) (emphasis added.) In defendants' summary judgment motion, they assert that they are entitled to summary judgment because they did not violate plaintiff's *Fourth* Amendment rights. (*See* Defs.' Br. In Supp. Of Summ. J. [21].) (emphasis added.) Therefore, before turning to the parties' contentions, the Court must determine the federal right at issue in the instant dispute.

The question of which federal right plaintiff seeks to vindicate is important because the standard of review for an excessive force claim brought under the Fourth Amendment is different from the one typically used for an excessive force claim brought under the Fourteenth Amendment. The Fourth Amendment prohibits unreasonable searches and seizures. Hence, when a plaintiff alleges excessive force by an officer in the course of executing an arrest or a search and seizure, he must show that the officer's conduct was objectively "unreasonable" in order to prevail on this kind of claim. *Graham v. Connor*, 490 U.S. 386, 395–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Such a test looks not to the motivation of the particular officer, but instead examines whether a reasonable officer would have taken the same action. *Id.* at 397, 109 S.Ct. 1865. Application of the Fourth Amendment to excessive force claims requires attention to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of others, and whether he is actively resisting arrest or attempting to evade arrest. *Id.* at 396, 109 S.Ct. 1865. Finally, the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–397, 109 S.Ct. 1865. In short, the Fourth Amendment prohibits force that is

---

**3.** Although plaintiff stated that his due process rights under the Fifth Amendment had been violated, the Court understands this to be an inadvertent error and presumes plaintiff intended to reference the Fourth Amendment. (*See* Pl.'s Resp. To Mand. Discl. [5] at 1.) The Fourteenth Amendment Due Process Clause incorporates many of the specific protections defined in the Bill of Rights, thereby allowing a plaintiff to bring a suit for such claims as a violation of the Fourth Amendment right to freedom from unreasonable searches and seizures. Plaintiff alleges that he was the subject of a "seizure" under the Fourth Amendment and Fourteenth Amendment at the time his rights were violated. As such, his claim does implicate the Fourteenth Amendment's enabling aspect that permits a plaintiff to assert a violation of the Bill of Rights against a state actor, but does not implicate the Fourteenth Amendment as a source of substantive protections against unreasonable search and seizures, for the reasons discussed *infra*.

objectively unreasonable, both in the decision to implement the force and in the degree of force. *Id. at* 394, 109 S.Ct. 1865; *Cottrell v. Caldwell,* 85 F.3d 1480, 1492 (11th Cir.1996).

█ The parameters of a Fourteenth Amendment claim of excessive force are a bit less clear than those applicable to a Fourth Amendment claim. With regard to a Fourteenth Amendment claim made by a convicted prisoner, the Supreme Court has indicated that the latter amendment provides no more protection to the inmate than does the Eighth Amendment, which is the constitutional provision more typically asserted by inmates in such situations:

> It would indeed be surprising if, in the context of forceful prison security measures, the conduct that shocks the conscience or afford[s] brutality the cloak of law, and so violates the Fourteenth Amendment, were not also punishment inconsistent with contemporary standards of decency and repugnant to the conscience of mankind, in violation of the Eighth.

*Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (citations and internal quotes omitted). The Eighth Amendment, which then is coterminous with the Fourteenth Amendment in this context, "prohibits the unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification." *Ort v. White,* 813 F.2d 318, 321 (11th Cir.1987); *see also Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). In a prison context, where forceful measures are undertaken to resolve a disturbance, the question of whether the chosen course of action inflicted unnecessary and wanton pain and suffering turns on "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley,* 475 U.S. at 320–21, 106

S.Ct. 1078 (citing *Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.1973), *rejected in part by Graham,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443). Stated another way, cruel and unusual punishment is applied maliciously and sadistically to cause harm; such conduct shocks the conscience, involves the unnecessary and wanton infliction of pain, and is grossly disproportionate to the offense for which it was imposed. *Telfair v. Gilberg,* 868 F.Supp. 1396, 1403, 1409 (S.D.Ga.1994).

Thus, the protection provided against excessive force by the substantive prong of the Due Process Clause of the Fourteenth Amendment therefore overlaps with that same protection provided to convicted inmates by the Eighth Amendment. Clearly, the latter sets out more onerous standards for a plaintiff to meet than does the Fourth Amendment. Delineation of the precise contours of the protection offered by the Fourteenth Amendment to non-convicted inmates, such as pretrial detainees, however, is not so clear. In a very thoughtful opinion, the Honorable Avant Edenfield, Southern District of Georgia, has concluded that, with regard to non-convicted inmates, the Fourteenth Amendment may trigger less onerous requirements of proof for a plaintiff than does the Eighth Amendment. *See Telfair v. Gilberg,* 868 F.Supp. 1396 (S.D.Ga.1994). It is clear, however, that, at best, the protections of the Fourteenth Amendment, as applied to a non-convicted individual, might approach those of the Fourth Amendment; such protections would never exceed the protections offered by the latter and, arguably, do not even trigger the same level of protections. *See generally Jordan v. Cobb County,* 1:99–CV–2837–JEC (Carnes, J.), Order dated September 28, 2001 at 18–50 (attached).

█ Thus, despite the fact that plaintiff couches his excessive force claim as one

arising under the Fourteenth Amendment, it is clear that the Fourth Amendment likely creates an easier burden for the plaintiff, as the plaintiff must only show an unreasonable use of force by the officer to satisfy the prohibition of that provision, rather than demonstrate that the conduct is wanton, arbitrary, or intended to punish, which arguably is the requirement of the Fourteenth Amendment. Nevertheless, regardless of which standard offers the plaintiff the lowest hurdle to climb, it is clear that under either parties' rendition of the facts of this case, the proper standard of review is under the Fourth Amendment. In *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court readily concluded that the Fourth Amendment applies to claims that a police officer utilized excessive force in effecting the *initial* arrest of a suspect, because the arrest of a person constitutes a "seizure" for the purpose of the Fourth Amendment and the deliberate use of excessive force in effecting that arrest amounts to an "unreasonable seizure" that is specifically prohibited by the Fourth Amendment. *Graham*, 490 U.S. at 394, 109 S.Ct. 1865. As the Supreme Court stated in *Graham v. Connor:*

> Where, as here, the excessive force claim arises in the context of an arrest or an investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons ... against unreasonable seizures" of the person.

*Id.* In contrast, the *Graham* Court noted that the Due Process Clause of the Fourteenth Amendment protects a *pretrial detainee* against the use of excessive force.

Moreland claims that he was arrested immediately before the alleged beating occurred. Defendants assert they arrested Moreland after he was eventually restrained. Thus, under either parties' con-

struction of the facts, Moreland's claim is properly brought under the Fourth Amendment. *See, e.g., Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality rejected a substantive due process claim under the Fourteenth Amendment because the Fourth Amendment addressed "the matter of pretrial deprivations of liberty."); *United States v. Myers,* 972 F.2d 1566, 1571–71 (11th Cir. 1992), *cert. denied,* 507 U.S. 1017, 113 S.Ct. 1813, 123 L.Ed.2d 445 (1993) (upholding a Fourth Amendment jury instruction in a post-arrest, pre-charge excessive force case); *Sweatt v. Bailey,* 876 F.Supp. 1571 (M.D.Ala.1995) (finding that beating of a person who had been arrested and was then in custody of police at police station implicates Fourth Amendment). Therefore, to the extent that plaintiff brings a claim under the Due Process Clause of the Fourteenth Amendment, such a claim is **DISMISSED**. Plaintiff's only viable claim therefore lies under the Fourth Amendment.

## B. Fourth Amendment Claim

Plaintiff claims that he is entitled to summary judgment due to defendants' use of excessive force. Defendants also claim that they are entitled to summary judgment for two reasons. Defendants argue first that they are protected by qualified immunity and, second, that even if they are not protected by such immunity, plaintiff has failed to establish that his Fourth Amendment rights were violated.

Before the Court can even address defendants' assertion of qualified immunity, it must first determine whether plaintiff has presented sufficient evidence that his constitutional rights were violated. The Supreme Court has recently held that the analysis of whether a public official is entitled to qualified immunity is a two-step inquiry that "must be considered in proper

sequence." *Saucier v. Katz,* 533 U.S. 194, 199, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). First, viewing the facts and evidence in the light most favorable to the plaintiff, the court must determine whether a constitutional right has been violated on the facts alleged. *Id.* Second, if the court determines that the plaintiff has presented sufficient evidence of a violation of a constitutional right, the court must then determine whether that right was "clearly established" at the time of the alleged violation. *Id.* Even if the court finds that a public official violated the plaintiff's constitutional rights, the official is entitled to qualified immunity if that particular right was not clearly established at the time of the alleged violation.

As the Supreme Court stated in *Saucier*:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. In the course of determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established. This is the process for the law's elaboration from case to case, and it is one reason for our insisting upon turning to the existence or nonexistence of a constitutional right as the first inquiry. The law might be deprived of this explanation were a court simply to skip ahead to the question whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case. If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.

*Id.* at 201, 121 S.Ct. 2151 (citations omitted). Accordingly, the Court will first address whether plaintiff Moreland has alleged sufficient facts that support the inference that the officers' conduct violated his constitutional rights to be free from unreasonable searches and seizures as protected by the Fourth Amendment.

### 1. Analysis Under the Fourth Amendment

The Fourth Amendment prohibits unreasonable searches and seizures. Therefore, when a plaintiff alleges excessive force by a police officer in the course of executing an arrest or an investigatory stop, he must show that the officer's conduct was objectively "unreasonable" in order to prevail on this claim. *Graham v. Connor,* 490 U.S. 386, 395–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). This standard requires a "careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 395–96, 109 S.Ct. 1865 (quoting *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). The question the court must answer is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. 1865.

■ The Supreme Court has recognized that the "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396, 109 S.Ct. 1865. Consequently, in applying the "objective reasonableness" standard, the court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to

evade arrest by flight." *Id.* Furthermore, the officer's actions "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Finally, the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–397, 109 S.Ct. 1865.

■ In light of all of these considerations, the assessment of a police officer's use of force is a highly factual inquiry. When determining whether an officer's use of force was objectively reasonable, a court should consider "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically." *Moore v. Gwinnett County,* 967 F.2d 1495, 1498 (11th Cir.1992) (quoting *Leslie v. Ingram,* 786 F.2d 1533, 1536 (11th Cir.1986)). The plaintiff bears the burden of establishing that the defendants used or failed to prevent the use of excessive force.

As both parties have filed motions for summary judgment, the Court should first examine the evidence in a light most favorable to the plaintiff, as required for defendants' motion, and then should examine the evidence in a light most favorable to the defendants, as required for plaintiff's motion. Yet, the Court finds that under either side's construction of the facts, plaintiff cannot meet his burden because no reasonable finder of fact could conclude that the defendants' use of force was unreasonable.

■ The Court begins this analysis by reiterating the facts the parties agree upon. First, plaintiff willingly consented to exit his home and speak with the defendants. (Pl.'s Aff. ¶¶ 6–7.) After briefly questioning plaintiff for three to five minutes, defendants noticed a bulge in plaintiff's pants pocket. The defendants asked him what the item was, and plaintiff pulled out a large roll of cash. Whether the police engaged in a "physically aggressive" frisk, as plaintiff recalls, or whether plaintiff ran after the large roll of cash was discovered, as defendants state, is irrelevant to the fact that plaintiff began to flee from the police, causing the police to give chase on foot. (Pl.'s Aff. ¶¶ 7–8; DSMF ¶ 4.) Dorsey reached plaintiff first. (Pl.'s Aff. ¶ 9; DSMF ¶ 5.) Further plaintiff does not dispute that he struck Dorsey, after which defendants allegedly responded in the manner described by plaintiff. Indeed, plaintiff pled guilty to felony and misdemeanor obstruction of justice charges that stem from this event.[4] (Pl.'s Stmt. Of Mat.

---

4. Defendants assert that plaintiff's claim is barred due to plaintiff's guilty plea to the criminal charges of misdemeanor and felony obstruction of a peace officer by running from the officers and then striking Dorsey in the face. (*See* Defs.' Br. In Opp. To Pl.'s Summ. J. Mot. [23] at 7.) Plaintiff asserts that pursuant to *Haring v. Prosise,* 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983), a Section 1983 claim is not barred by a prior guilty plea. (*See* Pl.'s Br. In Supp. Of Pl.'s Mot. For Summ. J. [19] at 22.) In *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court noted that:
   in order to recover damages for allegedly unconstitutional conviction or imprison-

ment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a [Section] 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance pf a writ of habeas corpus, 28 U.S.C. ¶ 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under [Section] 1983.
*Id.* at 486, 114 S.Ct. 2364. Were plaintiff claiming an unlawful arrest, his convictions

Facts [19] ¶ 12; Defs.' Resp. To Pl.'s Stmt. Of Undisp. Facts [23] ¶ 12.) Plaintiff's medical records indicate that he had a one and one-half centimeter cut above his eye and bruising on one cheek. Plaintiff received prompt medical care for his injuries. Under these undisputed facts, it is reasonable that the defendants used some amount of force to detain the fleeing individual. The question, then, is was the amount of force used by the defendants reasonable.

Plaintiff's version of events portrays the defendants as the aggressors, with minimal physical provocation by him. Specifically, plaintiff asserts that, while he was "pinned to the ground" by Dorsey, Long began to use his "closed fist" and "police flashlight" to strike him "violently and savagely" on the head, neck, shoulders, ribs and lower back. (*Id.* ¶ 10.) Plaintiff claims that Long also kicked him in the ribs while he "laid in Dorsey's restraint," and "deliberately and maliciously injected pepper spray directly into my eyes, nostrils, and mouth." (*Id.* ¶ 11.) In addition to the cut and bruising indicated in his medical record, Moreland claims he was unconscious for a few minutes following the event. Plaintiff notes that at no time during his apprehension and arrest did Dorsey ever intervene to protect him from the physical blows thrown and pepper spray sprayed by Long. (Pl.'s Aff. ¶ 14.)

When a plaintiff alleges excessive force by an officer in the course of executing an arrest or a search and seizure, he must show that the officer's conduct was objectively "unreasonable" in order to prevail on this kind of claim. As stated before,

such a test examines whether the suspect poses an immediate threat to the safety of others, and whether he is actively resisting arrest or attempting to evade arrest. *Id.* at 396, 109 S.Ct. 1865. In this case, the plaintiff admits that he was fleeing the police officers in an active attempt to resist arrest. Further, he admits that once Dorsey reached him, he continued to actively resist arrest, and indeed injured the officer, as evidenced by his guilty plea to the offense of "striking [Dorsey] about the head and face." (*See* Defs.' Mot. For Summ. J.[21] at 5.) Plaintiff additionally admits that he had on his person dangerous contraband drugs and does not challenge the legality of his arrest or his conviction. While plaintiff does allege that Long struck him with a flashlight and kicked him, he admits he was only treated for a one and one-half inch cut and some bruising. Furthermore, he did not seek additional medical treatment for any lingering injuries.

Under plaintiff's version of the facts, no reasonable juror could conclude that it was unreasonable that Long used force on plaintiff that required treatment for some contusions and one laceration. Plaintiff fails to allege facts that, if proven at trial, could establish that it was unreasonable for Dorsey to fail to intervene because Moreland admits that he struck Dorsey and admits that Dorsey was on the ground with him. As further evidence of the reasonableness of the defendants' actions, plaintiff does not allege that the defendants continued to administer blows once plaintiff was subdued and handcuffed.

would likely prevent such a claim, as the latter, if successful, would tend to undermine the validity of the conviction. Yet, that the plaintiff may have run from the officers or initially struck an officer would give the police licence to use some force, but not unlimited force. Thus, plaintiff's present claim of excessive force, if valid, would not undermine

the factual basis of his conviction and does not constitute an indirect attack on his conviction. *Heck* therefore does not preclude the claim. Nevertheless, plaintiff's admission that he did run from and strike the officer is certainly an important factor in assessing the need for some use of force by the latter.

Therefore, under plaintiff's construction of the facts, the Court finds that plaintiff is unable to establish facts from which a reasonable juror could find the defendants' use of force to be so excessive as to run afoul of the protections guaranteed by the Fourth Amendment. Accordingly, plaintiff's motion for summary judgment is **DENIED**.

Because plaintiff cannot meet his burden under his own version of the incident, it is obvious that plaintiff cannot meet his burden under the version presented by the defendants. Defendants assert that Moreland rolled on top of Officer Dorsey and struck him with closed fists and his head. (Defs.' Mot. For Summ. J. [21] at 2.) Defendant Long explains he struck and eventually used his pepper spray on plaintiff in an attempt solely to extricate him from Dorsey and to subdue plaintiff in order to arrest him. (*Id.*) It is clear that no reasonable juror could find that the force defendants used under their version of the facts, which resulted in plaintiff suffering only relatively minor injuries of some bruising and one cut, was unreasonable under these circumstances. Accordingly, defendants' motion for summary judgment is **GRANTED**.

### 2. Qualified Immunity

■ Even if plaintiff were able to state a claim for a violation of his rights secured by the Fourth Amendment, both defendants are entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions from civil liability if their conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known." *Nolin v. Isbell,* 207 F.3d 1253, 1255 (11th Cir.2000) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

In addressing a qualified immunity defense, a two part analysis is used. First the defendant must prove that he was "acting within the scope of his discretionary authority" when the allegedly wrongful acts occurred. *Hudgins v. City of Ashburn,* 890 F.2d 396, 404 (11th Cir.1989) (citing *Rich v. Dollar,* 841 F.2d 1558, 1563–64 (11th Cir.1988)). Second, if defendant provides such proof, the burden is on plaintiff to show that, when defendant acted, the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful. *Post,* 7 F.3d at 1557.[5]

In the case at bar, there is no dispute that defendants were acting within their discretionary authority when they performed the acts that resulted in this lawsuit. Thus, the determination of defendants' qualified immunity defense turns on whether a clearly established right was violated by their conduct. If the law has not staked out a bright line "right" in factual circumstances highly similar to those presented, qualified immunity almost always protects the defendant. In the context of excessive force claims, "qualified immunity applies unless application of the standard would inevitably lead every reasonable officer... to conclude the force was unlawful." *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1559 (11th Cir.1993), *modified,* 14 F.3d 583 (11th Cir.1994). In this case, defendants used what can only be considered reasonable force to apprehend a fleeing subject who, by his own admission, physically attacked defendant Dorsey.

Even if a jury could conclude that, in hindsight, the force used by defendants was unnecessary, qualified immunity would still apply here. Eleventh Circuit authority establishes that an officer who uses

**5.** The Supreme Court's recent opinion in *Hope v. Pelzer,* —— U.S. ——, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) does not affect the analysis in this case.

such minimal force as that at issue in this case necessarily would not believe that such force was excessive and hence would be entitled to qualified immunity. *See Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir.2000) (qualified immunity applied where officers, who grabbed the plaintiff, threw him against a van, and kneed him in the back, used de minimis force); *Jones v. City of Dothan*, 121 F.3d 1456, 1460 (11th Cir.1997) (qualified immunity appropriate for excessive force claims where officer "slammed" plaintiff against the wall and forced him to spread his legs apart because use of force was minimal and thus would not lead reasonable officer to believe that his actions were unconstitutional); *Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir.1997) (qualified immunity for officer on excessive force claim where plaintiff's pain from being handcuffed for twenty minutes not sufficient to inevitably lead reasonable officer to conclude that use of force was unlawful); *Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1559–60 (11th Cir.1993), *modified*, 14 F.3d 583 (11th Cir. 1994) (where officer pushed the plaintiff against a wall after he was handcuffed, de minimis rule applies to excessive force claims). In all of those cases, the plaintiffs suffered minor injuries similar to those suffered by the plaintiff in this instant action.

In short, plaintiff is unable to defeat defendants' motion for summary judgment because he has failed to produce evidence that, if proven at trial, would allow a factfinder to find that the plaintiff's injuries were anything but minor and this necessary inference warrants a finding of qualified immunity.[6]

### III. Plaintiff's State Law Claims

In plaintiff's summary judgment motion, he cites to one case in which a plaintiff police officer convicted of three misdemeanor counts of simple battery for his use of pepper spray on arrestees petitions the court for a new trial. (*See* Pl.'s Br. For Summ. J. [19] at 22 (citing *Dudley v. State*, 496 S.E.2d 341, 230 Ga.App. 339 (1998)).) As this case is inapt, the Court **DENIES** plaintiff's motion for summary judgment on state law claims.

To the extent that plaintiff's Complaint [1] can be read to set forth state claims for assault and battery, the Court finds that defendants should be **GRANTED** summary judgment on any such claims due to the state law of qualified immunity. Public officers can only be subject to suit if they negligently perform their ministerial functions or if they act with malice or intent to injure in the performance of their official functions. *Stone v. Taylor*, 233 Ga.App. 886, 888, 506 S.E.2d 161, 163 (1998). As defendants argue, because plaintiff admits that he struck one of the defendants, the defendants' actions can reasonably be understood as being made to protect themselves and to effectuate the arrest. *See Kidd v. Coates*, 271 Ga. 33, 34, 518 S.E.2d 124 (1999) ("Because an officer does not lose the right to defend himself when he acts in his official capacity, we hold that an injurious work-related act committed by an officer, but justified by self-defense, comes within the scope of official immunity.")

### IV. Other Motions

Two remaining motions are pending before the Court. First, plaintiff has filed a motion for the appointment of counsel [25–1]. Second, defendant has filed a motion

---

**6.** Plaintiff has not produced one scintilla of medical evidence in support of his claim that he experienced post-traumatic stress disorder.

In addition, plaintiff did not seek out further medical treatment after he was initially treated by the Henry Medical Hospital.

to amend the brief in support of the motion for summary judgment [24–1] due to an immaterial misstatement about the length of plaintiff's sentence for his guilty plea. As the plaintiff requested the assistance of counsel to assist him in the litigation of his Section 1983 claim, the Court **DENIES AS MOOT** plaintiff's motion for appointment of counsel. The Court **GRANTS** defendants' motion and did consider the amended brief in its decision on the summary judgment motions.

## CONCLUSION

For the foregoing reasons, the Court finds that plaintiff's motion for summary judgment [19–1] is **DENIED**, defendants' motion for summary judgment [21–1] is **GRANTED**, defendants' motion to amend the brief in support of motion for summary judgment [24–1] is **GRANTED**, and plaintiff's motion for appointment of counsel [25–1] is **DENIED as MOOT.**